### John H. Raymond v. Chicago, Burlington & Quincy Railway Company et al.

#### Gen. No. 4,618.

1. PASSENGER—*when one intending to become, cannot recover for injury.* A person who disregards warnings and proceeds out of the regular way to reach a station platform for the purpose of taking a train there and is injured while crossing the tracks of the carrier, on the right of way beyond the public street, is not entitled to recover, notwithstanding it be shown that the way taken by such person to reach such station was one customarily taken by others.

Action on the case for personal injuries. Appeal from the Circuit Court of Henry County; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1905. Affirmed. Opinion filed April 20, 1906.

CHESTER M. TURNER and ANDERSON & ANDREWS, for appellant.

CHARLES K. LADD, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

John H. Raymond, a traveling man, was injured while walking upon a switch track of the Burlington road, approaching its station house at Galva. He brought this suit against the Chicago, Burlington & Quincy Railway Company and the Chicago, Burlington and Quincy Railroad Company, to recover damages for said injury. Upon a jury trial defendants were found not guilty, and had judgment against plaintiff for costs, from which he appeals.

On the morning of the date of the injury Raymond arrived in Galva on the Rock Island Railroad, intending to

go to the Burlington depot and take its train.   The Rock
Island depot was south and west of the Burlington depot.
Raymond, carrying two valises, came upon a sidewalk run-
ning east and west.   He could have passed along that side-
walk to a point south of the east side of the depot, where
said sidewalk turned and passed north directly to the Bur-
lington depot, which was on the east side of a block, the
west side of which was bounded by Exchange street.   Ray-
mond did not pursue the course which led directly to the
depot, but turned north on Exchange street.   The Burling-
ton road had two main tracks, the north one a west-bound
track, the south one an east-bound track.   It also had va-
rious switch tracks both north and south of the main tracks.
North of the north main track there was a beaten path
from Exchange street to the depot along which a person
could safely pass.   On the morning of plaintiff's injury the
rails of the south main track had been taken up near the
depot for some purpose of repair, and the switch west of
Exchange street had been so set that trains going east would
turn upon a switch track just west of Exchange street and
pass south of the main tracks.   As Raymond approached
this crossing the gates were down, and upon one of these
gates facing him, was the word "STOP" in large letters.
A passenger train was approaching from the west, and
Raymond knew it.   Its bell was ringing, and it was going
slowly.   Raymond did not wait for it to pass, or for the
gates to be raised, but he passed around the end of the
gates, left the street, went upon the switch track on the
right of way, south of the main track, and proceeded along
it with his back to the approaching train, supposing that
the train would remain upon the main track.   A flagman
called out to him in warning.   Another railroad employee
near by called out to him.   He either did not hear or did
not heed the warning, but continued along the switch track
outside of the street, and was struck by the engine and
thrown from the track and injured.   The train was going
so slowly that the engine stopped twelve feet beyond where
he was struck.

Plaintiff proved that for a long time prior to his injury many other persons in going to the depot had crossed these tracks in the general course he was pursuing, and that defendants had taken no steps to prevent such travel. How could defendants prevent foot passengers from passing along the tracks? Even if they had enclosed the station grounds at every other place, they must have left open the places where their main and switch tracks cross the streets and pass into the station grounds. No law required them to erect barriers across their own tracks, or to station guards at each track to forcibly eject foot travellers who leave the streets on such tracks. Defendants held out no inducement to foot passengers approaching its stations to believe that its trains would not go upon its side tracks, nor did it authorize them to travel its tracks merely by its failure to mount a guard to eject them. True, passenger trains do not usually run in upon switch tracks; but they may lawfully do so at any time. Such tracks are built to be used by trains whenever necessary or convenient. No one can walk along a switch track on the railroad grounds with his back to a train of whose approach he has notice, and assume it will not come on the track he is upon, and if it comes upon that track and injures him, hold the company responsible on the mere ground that by frequent acts of that kind by himself and others they have acquired the right to use such track as a passageway, and that therefore the trains must stop. If plaintiff had remained upon the public street and had been injured there, he had received every warning which the law provided for his safety. He is in effect asserting that while walking along a side track on the right of way he was entitled to greater protection than would have been due him if he had been on the side track upon the public street. We regard it as settled by I. C. R. R. Co. v. Eicher, 202 Ill. 556; Bartlett v. Wabash R. R. Co., 220 Ill. 163, and McLaughlin v. C., R. I. & P. Ry. Co., 115 Ill. App. 262, that, whether Raymond be regarded as a trespasser or licensee, the railroad company was under no obligations to take precautions for his safety

Raymond v. C., B. & Q. Ry. Co.

or to run its trains in any respect different from what they would have been run if he were not there, except that the company and its servants were not at liberty to inflict upon him any wanton or intentional injury, and no intentional injury was pleaded or proved. It is true Raymond was going to the depot and intended to become a passenger, but we are. of opinion that when he departed from the regular way provided for that purpose and used the tracks of the company for his convenience in going to the station by a different route from that provided, he assumed the burden of caring for his own personal safety. There are two reasons why plaintiff cannot recover. First, the railroad company did everything it could do for his safety. It provided gates, which were down, which were themselves a warning to him. It placed the word "STOP" in large letters upon one of the gates facing him. The engine bell rang as required by law, and he also saw the train coming. Defendants' employees used their best endeavors to warn him after he had left the street. Second, he was guilty of contributory negligence.

It is argued that the court erred in various rulings upon the admission of testimony and upon instructions, and the question is raised whether a juror was not guilty of some misconduct in talking with a witness during the trial on subjects not connected with this case. We deem it unnecessary to consider these assignments of error, because, if they are all well taken, still we are of opinion plaintiff cannot recover upon the case made, and that the cause ought not to be remanded for any such errors if they exist.

The judgment is therefore affirmed.

*Affirmed.*